**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **APRIL WORLEY,** | ) | |
| | ) | |
| **Plaintiff.** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 2:06-CV-916-MEF** |
| | ) | |
| **PFIZER, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**</u>

Plaintiff, April Worley, responds to Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Amend Complaint as follows:

**PRELIMINARY STATEMENT**

Defendants support their opposition to Ms. Worley's motion to amend with a Declaration of Howard L. Blalock worded similarly in many respects to the Declaration of Defendant Smith. However, upon closer review, Mr. Blalock's Declaration is materially different than the Declaration of Defendant Smith. Defendant Smith states in his Declaration, "At no time have I ever met plaintiff April Worley or her physicians, Dr. Keith Martin or Dr. Patricia Elliot." (Doc. 1, Attachment 1 at 2.) Mr. Blalock, however, states only that he did not detail Depo Provera to Ms. Worley directly. (Doc. 29, Attachment 1.) He does not disclaim that he marketed or sold Depo Provera to Ms. Worley's prescribing physicians. (Doc. 29, Attachment 1). Clearly, if Mr. Blalock had not marketed and sold Depo Provera to Ms. Worley's prescribing physicians, he would have stated as much in his Declaration – just as Defendant Smith stated. The absence of such a statement is a tacit admission by Mr. Blalock that he did, indeed market and sell Depo Provera to Ms. Worley's physicians.

Defendants portray Ms. Worley's naming of Mr. Blalock as a defendant as a fishing exercise with the sole intent to avoid federal jurisdiction. (Doc. 29). Nothing could be further from the truth. Ms. Worley made clear at the outset of this litigation that she intended to include all defendants responsible for her injuries, including any sales people who misrepresented the safety and efficacy of Depo Provera to doctors and sold Depo Provera to those same physicians. (Doc. 1, Exhibit "A".) Unlike most other drugs that are purchased from pharmacies, Depo Provera was administered by doctors in doctor's offices. Upon information and belief, sales people were directly involved in ensuring doctors had the supplies of Depo Provera needed to administer to patients.

Ms. Worley has worked diligently to ascertain the identities of the fictitious defendants. As a result of her efforts, Ms. Worley discovered the identity of Mr. Blalock. See Affidavit of Ms. Worley attached hereto as Exhibit "A." Mr. Blalock's resume, attached hereto as Exhibit "B," evidences his work with Depo Provera in Montgomery, Alabama, during the time period that Ms. Worley was given Depo Provera. In fact, from the resume, it appears Mr. Blalock received numerous awards for his sales efforts. See Resume, Exhibit "B." Thus, Defendants' efforts to portray Ms. Worley's activities in this case as nefarious are without merit and are an affront to Ms. Worley's right to pursue this claim in the court of her choosing.

As demonstrated more fully below, Ms. Worley has stated viable causes of action against Mr. Blalock under Alabama law. Accordingly, Ms. Worley should be allowed to amend her Complaint to add Mr. Blalock as a Defendant for his role in causing or contributing to her injuries.

## ARGUMENT

**I.     MS. WORLEY HAS STATED A VIABLE CAUSE OF ACTION AGAINST MR. BLALOCK UNDER ALABAMA LAW.**

As Ms. Worley argues in her Motion to Remand (Doc. 6) and her Response to Motion to Dismiss Defendant Scott Griffin Smith (Doc. 27), the claims asserted against known and unknown sales representative defendants are viable under Alabama law.  See, Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc., 496 So. 2d 774 (Ala. 1986); Ala. Code § 6-5-101 (1975); Harrington v. Johnson-Rast & Hays Co., 577 So.2d 437 (Ala.1991).   Defendants' argument that it would be "futile" to allow Ms. Worley to amend her Complaint (Doc. 29 at 4) is without merit.

The Alabama Supreme Court has ruled that claims can be asserted against employees of a corporation for the role they played in marketing and selling defective products.  See, Ex parte Charles Bell, 496 So. 2d at 775 ("In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity.").;  See also, Clay v. Brown & Williamson Tobacco Corp., 77 F. Supp. 2d 1220, 1224 (M.D. Ala. 1999); see Seaborn v. R. J. Reynolds Tobacco Co., 1996 WL 943621 (M.D. Ala., Dec. 30, 1996)  (Court found that, to the extent a manufacturer defendant allegedly violated AEMLD, "it acted through its employees; the company does not employ ghosts.")  Significantly, the Court in Clay noted that discovery might well establish that the individual in-state defendant might have had superior knowledge to others, which could establish his independent liability under the AEMLD.  Id. at 1224.  Alabama law is also clear that it is not necessary to prove that a misrepresentation was made directly to the person that is injured, as Defendants have suggested.  See Declaration of Mr. Blalock (Doc. 29, Attachment 1 at 1)("At no time did I ever provide Depo Provera® Contraceptive Injection ('DCPI') or

information concerning DPCI to April Worley."); see Bloodsworth v. Smith & Nephew, 2005 WL at *11 (quoting Thomas v. Halstead, 605 S. 2d 1181, 1184 (Ala. 1992)) ("If a third person is injured by the deceit, he may recover against the one who made possible the damages to him by practicing the deceit in the first place.")   It is also well settled in Alabama law that "there is a duty not to make a false representation to those to whom a defendant intends, for his own purposes, to reach and influence by the representation." Id. at *11 (quoting Wheelan v. Sessions, 50 F. Supp. 2d 1168, 1174 (M.D. Ala. 1999) (DeMent, J.); see Colonial Bank of Ala. v. Ridley & Schweigert, 551 So. 2d 390, 396 (Ala. 1989); see also Brasher v. Sandoz Pharmaceuticals Corp., 2001 U.S. Dist. Lexis 18364, at *31 - *33 (N.D. Ala. Sept. 21, 2001) (wherein the Court found that the plaintiffs "clearly were the parties who were injured by the alleged fraud.  It also was clear that the drug manufacturer 'for its own purposes of promoting its product and making a profit, intended to reach and influence the patients of obstetricians, such as the plaintiffs.'")

What is glaringly absent from Mr. Blalock's Declaration is a statement similar to that of Defendant Smith – that he did not detail Depo Provera to Ms. Worley's prescribing physicians. See Declaration of Mr. Blalock (Doc. 29, Attachment 1.)  Rather, Mr. Blalock repeatedly denies any contact directly with Ms. Worley.  See Declaration of Mr. Blalock (Doc. 29, Attachment 1 at 1, 2)("At no time did I ever provide Depo Provera® Contraceptive Injection ('DCPI') or information concerning DPCI to April Worley[;]" "I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, April Worley[;]" and "I have never met nor spoken to April Worley.").  Such a Declaration is insufficient to obviate potential liability for the injuries sustained by Ms. Worley. In fact, as evidence in the resume of Mr. Blalock, (Exhibit "B"), it is clear that Mr. Blalock not only sold Depo Provera in the Montgomery County area during the time period in which Ms.

Worley received Depo Provera injections from her doctors, but he was awarded for his successful efforts at selling Depo Provera.

Defendants rely on <u>Legg v. Wyeth</u>, 428 F.3d 1317 (11th Cir. 2005), <u>Gordon v. Pfizer, Inc.</u>, 2006 WL 2337002 (N.D. Ala. May 22, 2006), and <u>Turner v. Azalea Box Co.</u>, 508 So. 2d 253 (Ala. 1987), to argue that the claims in Ms. Worley's Complaint are not supported under Alabama law.  (Doc. 29 at 4-5.)  Each of the cases relied on by Defendants, however, is easily distinguished from the case at bar.

In <u>Legg</u>, the plaintiff sued three Wyeth sales people as a result of injuries she sustained from taking Fen-Phen.  <u>Id.</u> at 1319.  One sales person submitted an affidavit stating she had never promoted or sold Redux; one sales person submitted an affidavit that he was a resident of Georgia, not Alabama; and one sales person submitted an affidavit that she had never detailed Redux to the plaintiff's physicians, and that she had no knowledge that Redux caused valvular heart disease.  <u>Id.</u> at 1321.

None of the affidavits submitted in <u>Legg</u> come close to what Mr. Blalock stated (or, equally as important, failed to state) in his Declaration.  (See Doc. 29 Attachment 1.)  First, Mr. Blalock admits he detailed Depo Provera (Blalock Decl. ¶ 4), thus the reasoning for the <u>Legg</u> court holding that Stubblefield was fraudulently joined in that action does not help Blalock here. Next, it is undisputed that Blalock is a citizen and resident of Montgomery County, Alabama. The <u>Legg</u> court's holding as to Sullivan is likewise of no help to Blalock since he is undisputedly a non-diverse party.  Finally, and in stark contrast to the Declaration submitted by Scott Griffin Smith[1] in this case, nowhere in Blalock's Declaration does he deny that he ever detailed Depo Provera to Dr. Keith Martin or Dr. Patricia Elliot.  See Declaration of Scott Griffin Smith (Doc.

---

[1] Plaintiff has moved to dismiss Defendant Smith from this action and that motion is currently pending before the Court.

1, Exhibit B.)  Moreover, unlike the salesperson in <u>Legg</u>, Mr. Blalock makes no statement in his Declaration that he had no knowledge that Depo Provera caused osteopenia.  Thus, no parallel can be drawn between the salespeople defendants in <u>Legg</u> and Mr. Blalock in the instant case.

In reversing the district court's remand of the action despite the existence of non-diverse, sales representative defendants, the Eleventh Circuit states:

> But there must be some question of fact before the district court can resolve [all questions of] fact in Plaintiff's favor. In this case, for example, the <u>Plaintiffs did not dispute Stubblefield's sworn statement that he never promoted or sold the drug Redux</u>. With no response from the Plaintiffs, there was no question of fact for the Court to resolve. The same goes for Weaver, who asserted that she did not know Redux may cause valvular heart disease. <u>The Plaintiffs offered no evidence to dispute this sworn statement</u>. When the Defendant's affidavits are undisputed by the Plaintiffs, the Court then cannot resolve the facts in the Plaintiff's favor based solely on the unsupported allegations in the Plaintiff's Complaint.

428 F.3d 1323.  (Emphasis added).  Here, not only is Mr. Blalock's Declaration sorely deficient to support Defendants' position that a claim cannot be brought against him under Alabama law, Ms. Worley has provided the Court additional evidence – Mr. Blalock's resume – to support a claim being brought against him.

Defendants further rely on <u>Gordon v. Pfizer, Inc.</u>, 2006 WL 2337002 (N.D. Ala. May 22, 2006), for the proposition that Mr. Blalock cannot be found liable under the AEMLD or the UCC.  (Doc. 29 at 5.)  In <u>Gordon</u>, the plaintiff asserted various claims against a non-diverse pharmaceutical sales person.  That defendant submitted a declaration in which he stated he was not aware of any risks of the drug that were not in the label (something that Mr. Blalock does not state in his Declaration).  <u>Id.</u> at *4.  The <u>Gordon</u> court, relying on <u>Legg</u>, <u>In re Rezulin Products Liability Litigation</u>, 133 F. Supp. 2d 287 (S.D.N.Y. 2001) and <u>In re Prempro Products Liability Litigation</u>, 2006 WL 617981 (E.D. Ark. 2006), refused to remand the case based upon the claims asserted against the non-diverse pharmaceutical sales person.

Just as <u>Legg</u>, is distinguishable from the case at bar, each of the decisions relied upon by the <u>Gordon</u> court are easily distinguishable.  In <u>In re Rezulin</u>, the district court for the Southern District of New York held that the AEMLD did not apply to a defendant pharmaceutical sales person who had no connection to the decedent in that case or the decedent's physician.  133 F.Supp.2d at 287.  In that case, the sales representative defendant filed an affidavit stating he <u>did not call on the Plaintiff's physician</u>.  <u>Id.</u>  In the instant case, however, Mr. Blalock <u>does not deny anywhere in his Declaration</u> that he called on Drs. Martin or Elliot.  (Doc. 29, Attachment 1.)

Moreover, as discussed in the Motion to Remand (Doc. 6), the "no reasonable basis" fraudulent joinder standard utilized by the District Court in the Southern District of New York in <u>In re Rezulin</u> is substantially different than the "no possibility" standard utilized in the 11th Circuit, <u>see</u>, <u>e.g.</u> <u>Triggs</u>, 154 F.3d at 1287 (fraudulent joinder can be established only if there is <u>no</u> possibility that a plaintiff can prove a cause of action against the resident defendant) (<u>citing Coker v. Amoco Oil Co.</u>, 709 F.2d 1433, 1440 (11th Cir. 1983)).  Consequently, the holdings in <u>In re Rezulin</u> cannot be relied upon to determine the viability of the claims asserted against Mr. Blalock in this case.

In <u>In re Prempro</u>, Judge Wilson, refusing to remand a complaint naming non-diverse pharmaceutical sales people, held that the court "has no responsibility to *definitively* settle the ambiguous question of state law."  Id. At *1 (emphasis in original.)  Instead, that court simply adopted the holding in <u>Bloodsworth v. Smith & Nephew</u>, 2005 WL 3470337 (M.D. Ala. 2005), which, too, is distinguishable from the instant case.

In <u>Bloodsworth</u>, the two non-diverse defendants submitted affidavits stating they had no knowledge of any design or manufacturing defects in the product at issue, <u>id.</u> at *2, and the plaintiff in that case presented no evidence to contradict the affidavits.  <u>id.</u> at *2-3, 5, 9.  In the

case at bar, Mr. Blalock's Declaration is utterly void of a similar statement. Rather, Mr. Blalock's Declaration states "[w]hat knowledge [he] had during [his] employment concerning DCPI was provided to [him] by [his] employer[]" and "[a]t no time did [he] have any involvement at all with the manufacture, development, or testing of DCPI." (Doc. 29, Attachment 1).

Defendants also rely on <u>Turner v. Azalea Box Company</u>, 508 So.2d 253 (Ala. 1987), for the proposition that Mr. Blalock cannot be liable under AEMLD. However, even a cursory reading of that case reveals that it involved a completely different issue. In <u>Turner</u>, the plaintiff injured his knee when he stepped on a pallet that he was loading and one of the slats broke. <u>Id.</u> at 253. He sued the Azalea Box Company under AEMLD alleging that it manufactured the pallet in question. <u>Id.</u> However, the evidence revealed that Azalea Box was only one of four possible entities from which the pallet could have been acquired, and the pallet in question could not be located after the incident. <u>Id.</u> Apparently, the only evidence the plaintiff had to offer in support of his allegations against Azalea Box was his testimony "that the pallet in question appeared to be brand new." <u>Id.</u> at 254. The Alabama Supreme Court held:

> In the instant case, there were three, and possibly four, sources from which the wooden pallet in question could have come. Coca-Cola received pallets from Gulf, Azalea Box, and other bottling companies in the area. A fourth source was Coca-Cola's repair of pallets. From this evidence, two things can be equally inferred: (1) Azalea Box manufactured and sold the subject pallet to Coca-Cola, or (2) Azalea Box did not manufacture and sell the subject pallet to Coca-Cola. Accordingly, to use this evidence to support Turner's contention that Azalea Box supplied the pallet in question to the exclusion of other sources is to engage in speculation and conjecture.

<u>Id</u>. at 254.

Because the plaintiff could not prove that Azalea Box, rather than one of the other three entities, was the manufacturer of the pallet in question, the Court affirmed the grant of summary

judgment against the plaintiff.  The Court did <u>not</u> hold that Azalea Box could never be liable to a plaintiff; the evidence in that case simply did not support plaintiff's allegations.  <u>Turner</u> is, therefore, non-instructive because whether the defendants manufactured Depo Provera is not at issue.

In all its efforts, Defendants have failed to show that Mr. Blalock cannot be held liable under Alabama law for his participation in the events leading to Ms. Worley's injuries.  Each of the cases cited by Defendants, as already noted, is factually distinguishable from the instant case.  Accordingly, Ms. Worley's motion should be granted and Mr. Blalock should be held to answer the allegations against him.

## II.    STRONG EQUITIES FAVOR MS. WORLEY'S AMENDMENT TO ADD MR. BLALOCK AS A DEFENDANT IN THIS CASE.

In the discretion of the court, amendments of complaints are granted even where the addition of a non-diverse defendant destroys diversity jurisdiction.  See <u>Davis ex rel Estate of Davis v. General Motors Corporation</u>, 353 F. Supp. 2d 1203 (M.D. Ala. 2005) (Fuller, J.).  In, <u>Davis</u>, the plaintiffs sued General Motors and Eric Lee, the driver of the vehicle that killed Davis.  The plaintiffs failed to make specific claims against Lee in the original complaint.  General Motors subsequently removed the case to this Court alleging fraudulent joinder of Lee.  The plaintiffs later asked for leave to amend the complaint to add specific allegations against Lee.  The court, relying on Fed. R. Civ. P. 15(a), allowed the addition of the non-diverse defendant and remanded the case to state court.

Unlike <u>Davis</u>, where the complaint did not contain allegations against the individual the plaintiff wished to add as a defendant, Ms. Worley's original complaint contained specific allegations against non-diverse Defendant Smith and Fictitious Defendants A, B, C, and D, who

were designated as those persons whose fraud, scheme to defraud, and/or other wrongful conduct caused or contributed to Ms. Worley's injuries.  Further, where, in <u>Davis</u>, the plaintiffs simply neglected to plead allegations against a known defendant, Ms. Worley was not aware of the identity of Mr. Blalock at the time she filed her original complaint.

The 11th Circuit balances four factors when deciding whether an amendment that would have the effect of destroying diversity jurisdiction is appropriate: 1) whether plaintiff's primary purpose is to defeat diversity jurisdiction; 2) whether plaintiff has been dilatory in seeking the amendment; 3) whether plaintiff will be significantly injured if the amendment is denied; and 4) whether other equitable factors favor the amendment.  <u>See</u> <u>Hensgens v. Deere & Co.</u>, 833 F.2d1179, 1182 (5th Cir. 1987).  Balancing the factors set out in <u>Hensgens</u>, it is clear that the amendment to add Mr. Blalock as a defendant in this case is appropriate.

### 1.    Ms. Worley's primary purpose is not to defeat diversity jurisdiction.

Ms. Worley's primary purpose in bringing this suit is to hold all persons accountable who caused or contributed to her injuries, including Mr. Blalock, who, as demonstrated above, can be held liable under the laws of Alabama.  Ms. Worley's original Complaint specifically asserted claims against Defendant Scott Griffin Smith, another former sales person for Defendants, and Fictitious Defendants A, B, C, and D.  Upon discovering Mr. Blalock's identity, Ms. Worley promptly sought to add him as a defendant in this action.

Defendants cite <u>Jerido v. American General Life and Accident Insurance Company</u>, 127 F.Supp. 2d 1322 (M.D. Ala. 2001), to support its argument that Ms. Worley's sole intent is to defeat diversity jurisdiction.  However, that case is easily distinguishable from the case at bar.  In <u>Jerido</u>, the plaintiff sought to amend her complaint to substitute another in-state defendant after it was discovered that the original in-state defendant was deceased.  No specific allegations were

made – in the original complaint or in the amended complaint – against the defendant the plaintiff sought to substitute for the deceased defendant. Additionally, that plaintiff offered "no explanation as to why she [sought] to add the individual she [] named in her First Amendment to her Complaint." Id. at 1325.

First, in the instant case, Ms. Worley does not seek to "substitute" Mr. Blalock for Defendant Smith. Additionally, Ms. Worley made specific allegations against the other Fictitious Party/sales representatives of Defendants in her original Complaint. (Doc. 1, Exhibit "A".) Finally, it is unclear in Jerido whether that plaintiff was aware of the identity of the defendant that she sought to substitute for the deceased defendant at the time she filed her original complaint. Regardless, in the case at bar, Ms. Worley was unaware of Mr. Blalock's identity until a few days before the Motion for Leave to Amend Complaint was filed with this Court. See Affidavit of Ms. Worley attached hereto as Exhibit "A."

**2.      Ms. Worley has not been dilatory in seeking to amend her Complaint to add Mr. Blalock as a defendant.**

Defendants cite Norman v. Family Dollar Stores, 2006 WL 3802390 (M.D. Ala. Dec. 22, 2006) and Porterfield v. Flowers Baking Co. of Opelika, L.L.C., 2006 WL 1147333 (M.D. Ala. May 1, 2006), both of which found the plaintiffs dilatory in naming the defendants they sought to add by amendment. First, in Norman, the plaintiff's original complaint was filed in the Circuit Court of Montgomery County and named Family Dollar Stores as the only defendant. The plaintiff did not fictitiously plead the identities of, or state any causes of action against, anyone besides Family Dollar. See Norman Complaint (attached as Exhibit "C"). Not until the case was removed, and approximately three months later, did that plaintiff even attempt to add the non-diverse defendant. Moreover, she did so "[w]ithout any explanation for her failure to include [that individual] as a defendant in the original complaint… ." Norman, at *1. In Porterfield, no

defendant other than Flowers Baking Company was named in the complaint, and no causes of action we pleaded against anyone other than Flowers Baking Company.  See Porterfield Complaint (attached as Exhibit "D".)

In the case at bar, Ms. Worley specifically pleaded counts against Mr. Blalock from the outset of this litigation, except his identity was not known – and could not have been known – until recently.  Within days of discovering Mr. Blalock's identity, Ms. Worley sought to amend her Complaint to add Mr. Blalock as a defendant.  Accordingly, Norman and Porterfield are not controlling in this case.

Similarly, in Smith v. White Consolidated Industries, Inc., 229 F. Supp. 2d 1275, 1280 (N.D. Ala. 2002), Sexton v. G & K Services, Inc., 51 F.Supp. 2d 1311 (M.D. Ala. 1999), and Bevels v. American States Insurance Company, 100 F.Supp. 2d 1039 (M.D. Ala. 2000), the plaintiffs were aware of the identities of the defendants they sought to add to the complaints prior to filing the original complaints.  In Smith, the plaintiff worked with the defendant whom he sought to add, had spoken with this defendant prior to filing suit, and this defendant had visited the plaintiff at his home while the plaintiff was recovering from surgery.  229 F. Supp. 2d at 1280.  In Sexton, the plaintiffs were dilatory in naming the new party as a defendant where the contract that was the subject of the litigation contained the name of the party plaintiff sought to add.  As Judge Albritton pointed out, "the Plaintiff could have ascertained the identity of Mailon Boyd prior to filing suit and prior to removal of this case, merely by looking at the contract."  51 F.Supp. 2d at 1314.  Finally, in Bevels, the evidence showed that plaintiffs were aware of the identity of the individual whom they sought to add before the suit was filed because that individual was the claims adjuster assigned to plaintiffs' claim for the loss of their funeral home by fire.  100 F.Supp. 2d at 1313.

Here, Ms. Worley was not aware of Mr. Blalock's identity until a few days before she sought to amend her complaint. In fact, Ms. Worley discovered Mr. Blalock's identity while performing an updated search for information on Depo Provera in early July 2007. See Worley Affidavit, Exhibit "A." The resume she located confirmed: 1) Mr. Blalock was employed by the corporate defendants during the time period in question; 2) his territory included Montgomery County, Alabama; and 3) that he detailed Depo Provera within this territory. See Resume, Exhibit "B". Notably, the website information accompanying that resume reveals that the resume was updated in late June 2007, merely a few weeks before Ms. Worley sought to add him as a defendant. See Worley Affidavit, Exhibit "A." Therefore, to say that Ms. Worley has been dilatory in naming Mr. Blalock simply is not true. Ms. Worley did not know – and could not have known – Mr. Blalock's identity before this time.

### 3. Plaintiff will be significantly injured if she is not permitted to add Blalock to this action.

Citing Jerido, supra, Defendants argue that full relief can be afforded to Ms. Worley if she is prevented from adding Mr. Blalock to this claim. As noted in the previous section, Ms. Worley seeks to hold all those accountable who are responsible for her injuries, and Ms. Worley has stated a viable cause of action against Mr. Blalock for his role in causing or contributing to those injuries. Defendants' argument to the contrary fails for several reasons.

First, as already noted, Legg does not hold that a pharmaceutical sales representative is absolutely immune from suit in Alabama as Defendants contend. The facts of this case, as clearly demonstrated, are distinguishable from those of Legg because the statements in those defendants' affidavits are in stark contrast to the statements in Mr. Blalock's Declaration. Legg simply does not support Defendant's assertions.

Next, if the amendment is not allowed, Ms. Worley will be forced to maintain a separate claim in state court against Mr. Blalock and all other sales persons revealed through discovery based almost entirely on the same evidence and witnesses as this case. Thus, Ms. Worley would be forced to litigate the same case twice, needlessly wasting judicial resources of both the state and federal courts.

Ms. Worley will be significantly injured if she is not permitted to add Mr. Blalock as a defendant to this action. Ms. Worley has a right to seek to hold responsible all the parties that caused or contributed to her injuries. Mr. Blalock's absence from this suit would have the effect of denying Ms. Worley complete relief.

4.    **The fourth <u>Hensgens</u> factor.**

Defendant's only claim as to other equitable factors balancing in their favor is its right to choose the federal forum. Be that as it may, in this case, Ms. Worley filed her lawsuit in Montgomery County, Alabama, because that court would afford her the opportunity to obtain <u>complete</u> relief from all potentially responsible parties. A denial of Ms. Worley's Motion for Leave to Amend Complaint will deny her the complete relief to which she is entitled.

**CONCLUSION**

For the reasons set forth herein, Ms. Worley's Motion for Leave to Amend Complaint should be granted so that she has the opportunity to hold <u>all</u> persons accountable who caused or contributed to her injuries.

　　/s/ W. Roger Smith, III
ANDY D. BIRCHFIELD, JR. (BIR006)
W. ROGER SMITH, III (SMI257)
MATTHEW E. MUNSON (MUN015)

Attorneys for Plaintiff

14

OF COUNSEL:

BEASLEY, ALLEN, CROW, METHVIN,
   PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone  (334) 269-2343
Fax      (334) 223-1236


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing document upon the parties as

listed below by placing a copy of same in the United States Mail, first class, postage prepaid on

this the <u>7th</u> day of August, 2007.

Andrew B. Johnson
George R. Parker
Bradley, Arant, Rose & White, LLP
1819 Fifth Ave. North
Birmingham, Alabama  35203

                                              /s/ W. Roger Smith, III
                                             OF COUNSEL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| APRIL WORLEY, | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| v. | ) | CASE NO. 2:06-CV-916-MEF |
| | ) | |
| PFIZER, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF APRIL WORLEY

1.     My name is April Worley.  I am over 21 years of age, of sound mind, and competent to make this affidavit.  This affidavit is based upon my personal knowledge.

2.     On or about July 9, 2007, as I was searching the internet for updated information on Depo-Provera, Howard L. Blalock's resume appeared in the search results, revealing that he was a sales representative for Pharmacia Corporation, that his territory included Montgomery County, Alabama, and that he detailed Depo-Provera in Montgomery County, Alabama.

3.     The website further revealed that Mr. Blalock's resume was modified on June 4, 2007.

4.     Mr. Blalock's resume did not appear in the search results of previous internet searches for the same information.

5.     I informed my attorneys immediately upon discovering Mr. Blalock's identity.

   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

   Dated: August 7, 2007.

April Worley



1

**STATE OF ALABAMA**
**MONTGOMERY COUNTY**

  I, the undersigned, a Notary Public in and for said county in said state, hereby certify that April Worley, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, she executed the same voluntarily on the day the same bears date.

  Given under my hand and official seal this _7_ day of _August_ , 2007.

(SEAL)

         _____
         Notary Public
         My Commission Expires: _10·16·2010_

# Howard L. Blalock, M.B.A.
## 2232 Young Farm Place
## Montgomery, Alabama 36106
## 334-324-1806 (cell)


EXHIBIT

**Experience:**

1/03 – Present    **Ortho Biotech Products - Oncology,** Montgomery, AL
Senior Oncology Product Specialist

- Responsible for promoting Procrit (anemia management), Doxil, and Velcade (chemotherapeutics) to Oncologists, Orthopedic Surgeons, and acute care hospitals in $15mm territory covering Alabama and Georgia.
- 2007 First Quarter Procrit Growth : $105,556 (12.33%)
- 2007 First Quarter Doxil Growth : $15,732 (20.13%)
- **2004 Ortho Biotech Teal Diamond Award recipient**
- **2006 Infinity Cup Award**

4/01 – 1/03    **Pharmacia Corporation,** Montgomery, AL
Pharmaceutical Sales Specialist

- Responsible for promoting Celebrex and Bextra (pain management) to Pain Specialists, Rheumatologists, and family practitioners.
- Promoted Detrol LA (incontinence) to Urologists and OB/GYNs
- Promoted Depo-Provera to OB/Gyns and family practitioners.
- Increased market share with existing accounts through effective pre-call planning, detailed sales presentations, and coordinating speaker programs for healthcare professionals.
    - **Qualified for 2002 Platinum Club (ranked 8th of 102 regional representatives)**
    - 2002 goal attainment: Celebrex (178.50%) Detrol LA (150%) Depo-Provera (250%)

10/97 – 4/01    **State Farm Insurance,** Montgomery, AL
Agency Field Specialist

- Responsible for marketing Life/Health insurance, and financial products to appropriate customers through needs based selling.
- Assisted thirty-one agents in developing and implementing business/marketing plans.
- Guided thirty-one agents in developing annual sales goals and monitoring their production on a weekly basis.

8/96 – 10/97    **SouthTrust Bank,** Montgomery, AL
Branch Manager/Business Development Officer

- Supervised operations of a branch that held $23,600,000 in deposits.
- Conducted sales presentations to a minimum of forty (40) prospective customers each month to recommend products and services to accommodate identifiable banking needs.

1/91 – 5/94    **Bradford –Parkside Chemical Dependency Hospital,** Montgomery, AL
Crisis Intervention Consultant (Marketing)

- Conducted sales presentations to healthcare professionals, law enforcement agencies, and company employee assistance directors to generate referrals.
- Implemented public relations and marketing initiatives to capitalize on media opportunities.
- Monitored and evaluated three crisis response counselors.

**Education:**

12/96    **Troy State University,** Montgomery, AL
Master of Business Administration

7/90    **Southern University and Agricultural and Mechanical College,** Baton Rouge, LA
Bachelor of Science in Business (Marketing)

**Exceptional Strengths:** Experience in promoting injectible ("buy and bill") and oral products, reimbursement , conducting sales presentations based on clinical data and contractual incentives.

IN THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA



|  |  |
|---|---|
| Vinnie Norman, | * |
| Plaintiff, | * |
| | * CASE NO.: CV ~06 - 1341 |
| | * |
| v. | * |
| | * |
| | * |
| | * |
| Family Dollar Stores, | * |
| Defendant. | * |

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY
2006 MAY 12 PM 12: 32

## COMPLAINT

COMES NOW the Plaintiff, Vinnie Norman, by and through her Attorney Christopher B.

Pitts of Christopher B. Pitts, P.C. in the above-styled cause and makes the following complaint for

personal injuries:

### Statement of the Parties

1.    Plaintiff, Vinnie Norman, is over the age of 19 years. Plaintiff is a citizen of the State of

Alabama and resides in Montgomery County, Alabama.

2.    Defendant, Family Dollar Stores (hereinafter "Defendant"), is a domestic corporation and

owns and operates various stores in the State of Alabama.

3.    Defendant owns and operates a Family Dollar Store located at 4752 Mobile Highway in

Montgomery, Alabama.

4.    On or about May 13, 2004, Defendant was conducting business in Montgomery, Alabama

and is therefore subject to the jurisdiction of this court.



## Statement of the Facts

5.    Plaintiff was a regular customer at the Family Dollar Store located at 4752 Mobile Highway in Montgomery, Alabama. On or around May 13, 2004, Plaintiff entered Defendant's store as a business invitee.

6.    On or around the date in question, Plaintiff walked down an aisle in the store and was struck in the head and back by a box.

7.    Subsequent to this incident, Plaintiff experienced numerous physical and/or health problems, such as blurred vision, seizures, increased blood pressure, a change in diabetic condition, a change in walking pattern, headaches, and pain in neck and shoulder area. In addition to the abovementioned physical and/or health problems, Plaintiff has suffered mental anguish as well as pain and suffering.

8.    Furthermore, Plaintiff had to seek medical treatment and has incurred medical expenses as a result of said incident.

## Count One : Negligence and Wantonness

9.    Plaintiff re-alleges paragraphs 1 through 8 of the Complaint.

10.    Defendant owed a duty of care to business invitees to maintain safe, non-hazardous premises and to make reasonable inspections of its premises.

11.    Defendant owed a duty of care to Plaintiff, a business invitee.

12.    Defendant breached its duty of care by failing to maintain safe, non-hazardous premises and by failing to conduct reasonable inspections of said premises to discover and reveal the same, thereby resulting in Plaintiff's injuries.

13.    Plaintiff's injuries were foreseeable or should have been foreseeable to Defendant due to such a dangerous condition existing on Defendant's premises.

14.   Defendant knew or should have known that the lack of inspection of premises or unsafe, hazardous conditions could cause serious bodily injury to Plaintiff.

15.   Therefore, Defendant's negligent and wanton actions caused Plaintiff's injuries.

16.   Plaintiff is entitled to recover compensatory and punitive damages for pain and suffering, mental anguish, and serious bodily injury arising from Defendant's negligence and wantonness.

17.   The aforementioned facts establish Plaintiff's claim for negligence and wantonness against Defendant.

### Relief Requested

Plaintiff requests relief from Count One by judgment against Defendant for compensatory and punitive damages.

Respectfully Submitted,

_____
Christopher B. Pitts (PIT031)
**Attorney for Plaintiff**

OF COUNSEL:
Christopher B. Pitts P.C.
4142 Carmichael Road, Suite A
Montgomery, AL 36106
(334) 356-9995

### JURY DEMAND

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.

_____
OF COUNSEL

| State of Alabama Unified Judicial System | **COVER SHEET** **CIRCUIT COURT - CIVIL CASE** (Not For Domestic Relations Cases) | Case Number CV-06-1341 |
|---|---|---|
| Form ARCivP-93    Rev. 5/99 | | C V ☐☐☐☐☐☐ |
| | | Date of Filing:    Judge Code: |
| | | Month  Day  Year    J-H |

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF __Montgomery__ , ALABAMA

*(Name of County)*

__Vinnie Norman__ v. __Family Dollar Stores__

Plaintiff    Defendant

| First Plaintiff | ☐ Business | ☑ Individual | First Defendant | ☑ Business | ☐ Individual |
|---|---|---|---|---|---|
| | ☐ Government | ☐ Other | | ☐ Government | ☐ Other |

**NATURE OF SUIT:** Select primary cause of action, by checking box *(check only one)* that best characterizes your action:

**TORTS: PERSONAL INJURY**

- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PROPERTY INJURY**

- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**

- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**

- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/ Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN** *(check one):*    F ☑ INITIAL FILING    A ☐ APPEAL FROM DISTRICT COURT    O ☐ OTHER:

R ☐ REMANDED    T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?**    ☑ YES    ☐ NO    Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P. for procedure)

**RELIEF REQUESTED:**    ☐ MONETARY AWARD REQUESTED    ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**    P I T 0 3 1    Date __May 12, 2006__    Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:**    ☐ YES    ☐ NO    ☐ UNDECIDED

## IN THE CIRCUIT COURT OF
## MONTGOMERY COUNTY, ALABAMA



|  |  |  |
|---|---|---|
| **Vinnie Norman,** | * | |
| **Plaintiff,** | * | |
| **vs.** | * | **CASE NO. CV _-06 -1341** |
| **Family Dollar Stores,** | * | |
| **Defendant.** | * | |

### SUMMONS

    This service by County Sheriff of this summons is initiated upon the written request of Plaintiffs' attorney pursuant to the Alabama Rules of Civil Procedure.

NOTICE TO:    <u>**Family Dollar Stores, 4752 Mobile Highway, Montgomery, Alabama, 36108**</u>

    The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

        **Christopher B. Pitts**
        **4142 Carmichael Road, Suite A**
        **Montgomery, AL 36106**

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

                                   _Melissa Rittenour_
                                   Circuit Clerk

DATED: _05/22/06_

IN THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA

HENRY G. PORTERFIELD,                    )
                                         )
         Plaintiff,                      )
                                         )
vs.                                      )  CIVIL ACTION NO.: Cv-05-2171
                                         )
FLOWERS BAKING COMPANY OF                )
OPELIKA, L.L.C.,                         )
                                         )
         Defendant.                      )

## COMPLAINT

1.      Plaintiff Henry G. Porterfield is over the age of nineteen (19) years and is a resident

of Montgomery County, Alabama.

2.      Defendant Flowers Baking Company of Opelika, L.L.C., on information and belief

is an Alabama corporation which does business by agent in Montgomery County, Alabama.

3.      Fictitious Defendants "A" through "G" are the true and correct names of the named

Defendants.

4.      Fictitious Defendants "H" through "M" are those persons, firms, corporations or other

business entities responsible for the acts alleged herein.

5.      On or about July 3, 2000, Plaintiff and Defendant entered into a Distributor's

Agreement whereby Plaintiff had the exclusive rights to distribute Flowers Baking Products within

a designated territory located within Montgomery, Alabama.

6.      On or about March, 2005, Defendant usurped Plaintiff's duties and obligations under

the Distributor's Agreement, wrongfully began delivery of products to Plaintiff's exclusive

customers, wrongfully began prohibiting Plaintiff from delivering Defendant's products to his

customers, wrongfully began to call on and sell Flowers products to the companies located within



Plaintiff's exclusive territory, and wrongfully began charging Plaintiff for costs and expenses associated with the delivery of product to Plaintiff's exclusive customers. Moreover, prior to said date and continuing after, Defendant wrongfully supplied Plaintiff with out of code product and/or required Plaintiff to buy and/or sell out of code product to his customers.

7.    The aforesaid actions of Defendant were without the permission of Plaintiff.

8.    The aforesaid actions of Defendant violated the terms of the contract entered into between Plaintiff and Defendant.

## COUNT ONE
### (Breach of Contract)

9.    Plaintiff hereby adopts and incorporates paragraphs 1 through 8 above as fully set forth above.

10.    Defendants breached their Distributor's Agreement with Plaintiff by prohibiting Plaintiff from calling upon and servicing accounts within Plaintiff's exclusive territory and by supplying Plaintiff with out of code product.

11.    As a proximate result of Defendant's breach, Plaintiff was injured and damaged in that he lost sales commissions and/or incurred vehicle rental expenses, drivers' salaries and expenses, and other unnecessary expenses and costs associated with Defendant's refusal to allow Plaintiff to fully service his accounts and customers, and Plaintiff was denied the benefit of his bargain.

WHEREFORE, premises considered, Plaintiff prays for compensatory damages in an amount equal to all commissions and profits Plaintiff would have received or made if Plaintiff had not been prohibited from servicing his accounts and customers, together with interest and cost.

2

## COUNT TWO
### (Misrepresentation)

12.    Plaintiff hereby adopts and incorporates paragraphs 1 through 11 above as fully set forth above.

13.    Defendant represented to Plaintiff that he was purchasing an exclusive right to territory to sell and distribute Flowers products within the territory specifically designated in the contract, and that Defendant would not allow any Defendant, any distributor or company, other than Plaintiff, to call on and distribute Flowers products to any customer within the exclusive territory Plaintiff purchased pursuant to the contract.

14.    Defendant represented to Plaintiff that "...maintaining a fresh market is a fundamental tenet of the baking industry, and that "out of code" product, or baked goods that were older then their expiration date, was a material breach of the Distributor's Agreement. Defendant further represented to Plaintiff that the "product," to be provided by Defendant to Plaintiff for Plaintiff to sell, "shall mean fresh baked goods..." and that Plaintiff "...may not sell any product over code or product not in a salable condition to the general public." Defendant further represented to Plaintiff that Defendant would provide Plaintiff with fresh product not beyond code, that it would require Plaintiff to remove "all stale products," and would never require Plaintiff to sell beyond code product to the general public.

15.    The said representations made by Defendant were false and were made intentionally with the knowledge of their falsity, recklessly, without knowledge, or innocently and by mistake.

16.    In reliance on said misrepresentations, Plaintiff entered into a Distributor's Agreement with Defendant, and expended time, money, and effort working his route.

3

17.     As a proximate result of Defendant's misrepresentations, Plaintiff was injured and damaged as follows:

A.     He did not receive correct commissions for sales made within his exclusive route;

B.     He was prohibited from making his own deliveries with his own equipment;

C.     He was charged with drivers' salaries, vehicle rental expenses, and other costs and expenses of deliveries conducted by Defendant that are in excess of the costs and expenses Plaintiff incurred when he made his own deliveries;

D.     He was given "out of code" or expired product to sell to customers;

E.     He was required to sell "out of code" or expired product to customers in violation of his Distributor's Agreement;

F.     His contract was terminated because of his concerns and complaints regarding out of code products;

G.     He suffered mental anguish and emotional distress and was otherwise injured and damaged.

WHEREFORE, premises considered, Plaintiff prays for compensatory and punitive damages in excess of the jurisdictional limits of this Court together with costs.

## COUNT THREE
### (Negligence)

18.     Plaintiff hereby adopts and incorporates paragraphs 1 through 17 above as fully set forth above.

19.     Defendant negligently failed to abide by the terms of its agreement with Defendant by supplying Defendant with "out of code" or expired product, and/or by requiring Plaintiff to

4

deliver "out of code" or expired product to his customers and/or by usurping Defendant's duties and

obligations under the contract causing him to incur unnecessary expenses and costs.

20.    As a proximate result of Defendant's negligence, the Plaintiff incurred numerous

expenses he otherwise would not have incurred, and Plaintiff lost profits and income due to him

under the Distributor's Agreement, continues to lose profits, and will continue to lose profits.

WHEREFORE, premises considered, Plaintiff prays for compensatory and punitive

damages in excess of the jurisdictional limits of this Court, together with costs.

### COUNT FOUR
### (Wantonness)

21.    Plaintiff hereby adopts and incorporates paragraphs 1 through 20 above as fully set

forth above.

22.    Plaintiff was wantonly denied his rights under the Distributor's Agreement, was

wantonly denied the ability to deliver product to his exclusive territory, was wantonly taxed and/or

charged with unnecessary costs and expenses associated with Defendant prohibiting Plaintiff from

servicing his exclusive customers, was wantonly provided with "out of code" or expired product, and

was wantonly forced to market and sell "out of code" or expired product.

23.    As a proximate result of Defendant's wantonness, Plaintiff lost revenues and profits,

incurred unnecessary and burdensome expenses and costs, and will continue to incur unnecessary

expenses and  costs and suffer lost profits.

24.    As a proximate result of Defendant's wantonness, Plaintiff suffered emotional

distress, aggravation, humiliation, and mental anguish.

WHEREFORE, premises considered, Plaintiff prays for compensatory and punitive damages in excess of the jurisdictional limits of this Court, together with costs.

## COUNT FIVE

25.    Plaintiff hereby adopts and incorporates paragraphs 1 through 24 above as fully set forth above.

26. .    On or about March, 2005, Defendant corporation converted to its own use the exclusive territory, as set forth and described in the July 3, 2000 Distributor's Agreement entered into between Plaintiff and Defendant, and all customers serviced by Plaintiff therein, and prohibited Plaintiff from servicing said customers.

27.    The value of said contract and exclusive territory is in excess of the minimal jurisdictional amount of this Court.

28. .    As a proximate result of Defendant's wantonness, Plaintiff lost revenues and profits, incurred unnecessary and burdensome expenses and costs, and will continue to incur unnecessary expenses and costs and suffer lost profits.

29.    As a proximate result of Defendant's wantonness, Plaintiff suffered emotional distress, aggravation, humiliation, and mental anguish.

WHEREFORE, premises considered, Plaintiff prays for compensatory and punitive damages in excess of the jurisdictional limits of this Court, together with costs.

Greg L. Davis (DAV077)
Attorney for Plaintiff

6

OF COUNSEL:

The Law Offices of
Greg L. Davis
6987 Halcyon Park Drive
Montgomery, Alabama 36117
(334)832-9080

_Dan W. Taliaferro_
Dan W. Taliaferro (TAL006)
Attorney for Plaintiff


Dan W. Taliaferro
Attorney at Law
6987 Halcyon Park Drive
Montgomery, Alabama 36117
(334) 409-0545


## JURY DEMAND

   PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO
TRIABLE.

_Dan W. Taliaferro_
OF COUNSEL

7